1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7

8                          FOR THE EASTERN DISTRICT OF CALIFORNIA

9

TIMOTHY CRAYTON,                           No. C 08-00621 WHA (PR)

10
                Plaintiff,                  **ORDER ON MOTIONS TO DISMISS;**
11                                          **MOTION FOR PARTIAL SUMMARY**
                                            **JUDGMENT; MOTION TO DECLARE**
12      v.                                  **PLAINTIFF A VEXATIOUS**
                                            **LITIGANT; PLAINTIFF'S MOTION**
13                                          **TO RECONSIDER; AND FURTHER**
                                            **SCHEDULING**
14   CORRECTIONAL OFFICER A.
     HEDGPETH, et al.,
15
                Defendants.
16   _____/

17

18                                  **INTRODUCTION**

19          This is a civil rights action filed under 42 U.S.C. 1983 by a California prisoner

20   proceeding pro se.  Plaintiff claims that defendants violated his constitutional rights.  He alleges

21   that defendants engaged in deliberate indifference, retaliation, and violated the Americans with

     Disabilities Act ("ADA"), as well as numerous state laws.  Defendants Harrington, Wood, S.
22
     Hass, J. Hass. McAleavey, Thomas, Smith, Northcutt, Morales, Sedlezky, Dileo, Rufino,
23
     Jeffreys, Molina, Campagna, Whitehead, Cruse, Neighbors, Jones, Sellers, Hightower, Corrales,
24
     Hedgpeth, Matheny, and Harden have filed a motion to dismiss ("MTD") and a motion for
25
     partial summary judgment ("MSJ"); defendants Lopez and Adams have filed separate motions
26
     to dismiss ("Lopez MTD" and "Adams MTD," respectively).  Plaintiff has filed separate
27
     oppositions to all the motions.  Defendants have filed their replies.  Defendants have also filed a
28
     motion to declare plaintiff a vexatious litigant and a request for judicial notice.  Plaintiff has

**United States District Court**
For the Eastern District of California

filed an opposition and defendants their reply.  Finally, plaintiff has filed a motion to vacate and set aside the dismissal of claims and defendants, which this order construes as a motion to reconsider.  Defendants have filed an opposition and plaintiff a reply.

For the reasons set out below, defendants' motions to dismiss and motion for summary judgment are granted in part and denied in part.  Defendant Lopez's motion to dismiss is denied.  Defendant Adams' motion to dismiss is denied.  Defendants' motion to declare plaintiff a vexatious litigant is denied.  Defendants' unopposed request for judicial notice of records from proceedings from plaintiff's previous lawsuits in the state and federal courts is granted.  Plaintiff's motion for reconsideration is granted in part and denied in part.

**STATEMENT**

In his First Amended Complaint, plaintiff raised seventeen cognizable claims against over thirty prison officials employed by either Salinas Valley State Prison or Kern Valley State Prison.  His claims are based on allegations that he had filed a civil suit against several defendants, and as a result, defendants -- who were part of a group of correctional officers known as the "Green Wall" gang -- retaliated against him in an attempt to persuade him to dismiss the suit, as well as other pending suits.  The claims span over a period of years, and accuse defendants of sexual assault; threats; intimidation; physical injuries; confiscation of private property; deliberate withholding of access to plaintiff's wheelchair, bedding and blankets, and personal property; and failure to provide him with reasonable accommodations, among other things.

**ANALYSIS**

A.   <u>Motions to Dismiss for Failure to Exhaust</u>

In defendants' motions to dismiss (Dkt. 106, 131, 158), they argue that plaintiff failed to exhaust most of his 17 claims.  This order rejects plaintiff's arguments regarding res judicata, collateral estoppel, spoliation of evidence, a prior state court stipulation, and standing (Opp. to MTD at 36-38-A) as inapplicable.

**United States District Court**
For the Eastern District of California

1.   <u>Standard of Review</u>

Federal law provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. 1997e(a).  Although once within the discretion of the district court, exhaustion in prisoner cases covered by Section 1997e(a) is now mandatory.  *Porter v Nussle*, 534 U.S. 516, 524 (2002).  All available remedies must now be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  *Ibid.* (citation omitted).

California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare."  15 Cal. Code Regs. § 3084.1(a).  It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers.  *See* 15 Cal. Code Regs. § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation.  *See* 15 Cal. Code Regs. § 3084.5; *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  A final decision at the director's level satisfies the exhaustion requirement under Section 1997e(a).  *Id.* at 1237-38.

Nonexhaustion under Section 1997e(a) is an affirmative defense.  *Jones v. Bock*, 549 U.S. 199, 217-18 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints.  *Jones*, 549 U.S. at 215-17.  As there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process.  *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005).

United States District Court

For the Eastern District of California

1

2. <u>Claims 1-6 and 9</u>

2       In Claims 1-6 and 9, plaintiff alleged that between February 24-28, 2006, defendants

3    Corrales, Matheny, and Hedgpeth refused to supply him with a mattress, bedding, and clothing

4    despite his fragile medical condition and disabilities (First Amd. Compl. ¶¶ 42-68, 83-106,

5    110-12).  He also argued that on February 26, 2006, as a result of the failure to supply him with

6    a mattress, as he was trying to move himself from the metal bunk to his wheelchair, he began to

7    cough (*id.* at ¶ 69).  He then reached for the standard safety "Grab Bar" that is normally

8    attached underneath of the top bunk frame of an ADA-compliant wheelchair-accommodating

9    cell, but because no "Grab Bar" existed, plaintiff fell and sustained injuries (*id.* at ¶ 69-74).

10      Defendants argue that plaintiff did not exhaust Claims 1-6 and 9 because there is no

11   record that plaintiff received a director's level decision concerning these events.  Plaintiff

12   insists that he exhausted these claims in KVSP 06-2502, in which he received a decision from

13   the director's level on May 16, 2007 (Opp. to MTD, Exh. 22).

14      In KVSP 06-2502, at the informal level of review, plaintiff argued that he was a

15   wheelchair-bound paralytic chronic care medical patient and needed extra blankets to regulate

16   his body heat (*id.*, Exh. 7).  He complained that he was left in a cell without clothing or

17   bedding, and asked for "2 extra blankets and other ADA accommodations" (*ibid.*).  The

18   informal level of review was screened out (*id.*, Exh. 20).  According to plaintiff, per instructions

19   by Appeals Coordinator B. Gricewich, plaintiff attached a copy of his original appeal, and

20   attached it to a supplemental appeal dated July 17, 2006, so that they could be combined under

21   one log number -- KVSP 06-2502 (Opp. to MTD at 24).  Plaintiff's appeal was bypassed at the

22   informal level of review and then partially granted at the second level of review (Foston Decl. ¶

23   3).  In the second level of review, plaintiff complained that the appeals process was taking too

24   long, and the screening out of his appeal was slowing down his ability to reach the courts (Opp.

25   to MTD, Exh. 23).  The second level of review was partially granted to the extent that there was

26   going to be a new system to track delayed appeals (*ibid.*).  At the director's level of review,

27   plaintiff's appeal was denied (*id.*, Exh. 22).  The decision recognized that plaintiff was

28

4

United States District Court

For the Eastern District of California

1    appealing the processing of a prior appeal, i.e., concerning the incidents that occurred from

2    February 24-28, 2006.  It also reiterated that the appeal concerning those incidents was properly

3    screened out (*ibid.*).

4         While plaintiff did receive a decision from the director's level of review in KVSP

5    06-2502, he did not exhaust his administrative remedies regarding the lack of bedding and

6    clothing, and resulting injuries, complained of in Claims 1-6 and 9.  His appeal at the director's

7    level of review focused on the delays in the administrative appeals process, and requested that

8    those delays be documented (*ibid.*).  Because administrative remedies may not be exhausted

9    where the grievance does not have the same subject and same request for relief, plaintiff did not

10   properly exhaust his administrative appeals for Claims 1-6 and 9.  *See, e.g.*, *Morton v. Hall*, 599

11   F.3d 942, 946 (9th Cir. 2010) (grievance that complained of visitation restrictions, and did not

12   mention an assault or theorize that the visitation restriction imposed was related to the assault,

13   was insufficient to put prison officials on notice that staff conduct contributed to the assault);

14   *O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1063 (9th Cir. 2007) (even with

15   liberal construction, grievance requesting a lower bunk due to poor balance resulting from a

16   previous brain injury was not equivalent to, and therefore did not exhaust administrative

17   remedies for, claims of denial of mental health treatment in violation of the ADA and

18   Rehabilitation Act).

19        Defendants have established that plaintiff did not properly exhaust an administrative

20   appeal involving the events giving rise to Claims 1-6 and 9 at the director's level of review.

21   The federal allegations raised in Claims 1-6 and 9 are DISMISSED.

22        3.   Claims 7, 8, 16, 17

23        In Claims 7 and 8, plaintiff alleged that on July 3, 2008, December 9, 2008, and

24   December 11, 2008, defendants Hedgpeth, Harrington, and Wood were deliberately indifferent

25   to him when he reached for an absent "Grab Bar" in his cell, and he fell and injured himself

26   (First Amd. Compl. ¶¶ 184-89, 231-23, 236-39).  In Claim 16, plaintiff alleged that from July 2,

27   2008 through April 10, 2009, defendants Adam, Hedgpeth, Harring, Butterfield, Ward, Rufino,

28

United States District Court

For the Eastern District of California

Jeffreys, Molina, Whitehead, Hass, Campagna, Fernando, Phillips, Cruse, Neighbors, Jones, Sellers, and Amavisca engaged in a variety of retaliatory acts including confiscating his personal and legal property (*id.* ¶¶ 474-90, 492-549).  In Claim 17, plaintiff argued that defendants Adam, Amavisca, and Hightower retaliated against him by confiscating his personal and legal property (*id.* ¶¶ 576-95).

Because defendants concede that *Rhodes v. Robinson*, 621 F.3d 1002, 1006-07 (9th Cir. 2010), is applicable to these claims, defendants withdraw their motion to dismiss as to Claims 7, 8, 16, and 17.  Based on this concession, and in light of *Rhodes*, 621 F.3d at 1007, defendant Adams' motion to dismiss for failure to exhaust Claim 17 is also DENIED.

### 3. Claim 11

In Claim 11, plaintiff claimed that on April 11, 2003, defendant McAleavey retaliated against him by destroying his personal property (First Amd. Compl. ¶¶ 332-33).  Defendants argue that there is no record that plaintiff filed a grievance concerning this, and at the very least, that plaintiff did not obtain a director's level of review.  Plaintiff refutes defendants' argument, and alleges that he grieved this destruction of his property, and it was combined with SVSP-D-02-02727 (Opp. to MTD at 8).  Defendants respond that plaintiff has not supported his argument with any legal authority that suggests he was permitted to exhaust his administrative remedies through a prior grievance.

Defendants have the burden of raising and proving the absence of exhaustion.  *Jones*, 549 U.S. at 215-17.  Thus, defendants must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process.  *Brown*, 422 F.3d at 936-37.  A review of appeals submitted by plaintiff to the director's level of review (Opp. to MTD, Exh. 5) shows that SVSP-D-02-02727 was denied at the director's level of review on April 30, 2003.  Because no party has submitted documents from SVSP-D-02-02727 for the court's review, the court cannot determine whether that appeal did indeed exhaust Claim 11 by including sufficient information "to allow prison officials to take appropriate responsive measures."  *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir.

United States District Court

For the Eastern District of California

2009).  At first blush, it appears that an appeal filed at the director's level of review on a date prior to the underlying alleged incident could not exhaust a claim concerning that incident. Because, however, the director's level of review did not deny plaintiff's appeal until after the alleged incident occurred, we cannot exclude the possibility that plaintiff's appeal at the director's level of review addressed, and exhausted, plaintiff's Claim 11.  Defendants have not met their burden of demonstrating the absence of exhaustion.

Thus, Claim 11 will not be dismissed for failure to exhaust.  Should they obtain documents from the SVSP-D-02-02727 appeal and determine that the director's level of review did not exhaust Claim 11, defendants may file a renewed motion for summary judgment with the proper evidentiary showing.

4.   Claim 12

In Claim 12, plaintiff alleged that on December 13, 2004, defendant Lopez retaliated against him; on January 11, 2005, defendant Matheny retaliated against him; and on January 21, 2005, defendant Thomas retaliated against him (First Amd. Compl. ¶¶ 359-61, 363-67, 368-76).

a.   December 13, 2004

Lopez argues that plaintiff's appeal, SVSP-B-04-04712, was properly screened out at the second level of review and plaintiff never re-submitted his appeal in compliance with department regulations.  A declaration from the custodian of records at SVSP who tracks inmate appeals declared that when a submitted appeal is not in compliance with the CCR, that appeal is returned to the prisoner with instructions on next steps (Medina Decl. ¶¶ 2-4).  The SVSP inmate appeal records showed that SVSP-B-04-04712 was denied at the first level of review on February 4, 2005 (*id.* ¶ 5).  Then, on March 21, 2005, plaintiff was told to resubmit his appeal with the first level response (*id.*, Exh. B).

Plaintiff disputes Lopez's claim that he never re-submitted his appeal at the second level of review (Opp. to Lopez MTD at 6-7).  In fact, plaintiff argues that he explained on the screening form that he had indeed submitted the original response from the first level of review, even though the screening form indicated that he had not (*ibid.*).  Because he no longer had the

United States District Court

For the Eastern District of California

original response, plaintiff attached a copy of it, along with the re-submitted appeal for a second

level of review (*ibid.*).  Plaintiff alleges that after that appeal was again returned for failure to

submit the proper document, plaintiff re-submitted yet another copy of the first level of review

response, along with the same explanation that he no longer had the original (*id.* at 7).  Plaintiff

received that appeal back without any comment (*ibid.*).  Plaintiff attached a third copy of the

first level of review response along with an appeal, and then submitted it to the director's level

of review.  That appeal was returned with a notice that it was denied, rejected or cancelled

(*ibid.*).  Plaintiff believes that unspecified defendants confiscated and destroyed the appeal

documents that would have demonstrated that he had indeed exhausted his administrative

remedies.

Lopez has not refuted nor submitted any evidence regarding whether plaintiff did

indeed submit SVSP-B-04-04712 to the director's level of review, or whether plaintiff did

indeed attempt to explain why he was unable to comply.  As the Ninth Circuit explained, a

proper screening decision does "not foreclose the possibility that exhaustion might also be

excused where repeated rejections of an inmate's grievances at the screening stage give rise to a

reasonable good faith belief that administrative remedies are effectively unavailable." *Sapp v.*

*Kimbrell*, 623 F.3d 813, 826 (9th Cir. 2010).  Although the screening decision at the second

level of review purportedly informed plaintiff as to what he needed to do to remedy the

situation, plaintiff indicates that he attempted to explain why he could not comply, and also

contested that decision.  Regarding the incident on December 13, 2004 against Lopez, plaintiff

could have had a reasonable belief that further administrative remedies were effectively

unavailable.

     b. <u>January 11, 2005</u>

Matheny argues that, while SVSP 05-00275 concerns the alleged underlying incident on

January 11, 2005, there is no record that plaintiff ever obtained a decision from the director's

level of review.  Plaintiff replies that, not only was he prevented from seeking a director's level

review, he was not required to do so because he received a partial grant at the second level of

**United States District Court**
For the Eastern District of California

1  review (Opp. to MTD at 31-32).  Defendants assert that because plaintiff was not satisfied with

2  the partial grant, he was required to obtain a decision from the director's level.

3       Plaintiff's appeal against Matheny was characterized as a staff complaint (Opp. to MTD,

4  Exh. 26).  The second level appeal response "partially granted" the appeal; informed plaintiff

5  that an investigation would be conducted; indicated that plaintiff would be informed of the

6  result; stated that appropriate action would be determined by the administration; advised that

7  any personnel action would remain confidential and would not be disclosed; and did not

8  indicate that any further review was available (*ibid.*).

9       Similarly, in *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005), the prisoner filed an

10  appeal which the prison characterized as a staff complaint.  The second level of review response

11  "partially granted" the appeal; informed the prisoner that a thorough investigation would be

12  conducted; indicated that the Administration would decide on "appropriate action," stated that

13  the prisoner would not know if any disciplinary action would be taken as a result; and did not

14  inform the prisoner that any further review was available.  *Id.* at 937.  The Ninth Circuit stated

15  that a reasonable interpretation of the response was that no further relief was available through

16  the administrative appeals process, and concluded that the prisoner need not further pursue the

17  grievance for purposes of exhaustion.  *Id.* at 934-35, 937-38.

18       Here, a reasonable interpretation of the response plaintiff received from the second level

19  of review was that no further relief was available, and plaintiff did not need to file any further

20  grievance to exhaust this claim.

21            c.    <u>January 21, 2005</u>

22       Thomas asserts that there is no record that plaintiff ever filed any grievance against him.

23  Plaintiff argues that he combined his claim against Thomas with his claim against Matheny in

24  SVSP 05-00275 (Opp. to MTD at 31).  He claims that SVSP 05-00275 was repeatedly rejected

25  at the director's level of review, and submits a copy of a portion of an administrative appeal that

26  complained about Thomas (*id.*, Exh. 31).  In that copy, plaintiff had written why he was

27  dissatisfied with what appeared to be a denial at the first level of review (*ibid.*).  In his

28

United States District Court

For the Eastern District of California

explanation of facts, he mentioned only Thomas, Lopez, and non-defendant Scheerer as the officers who "conspired to physically torture and abuse" him – he makes no mention of Matheny (*ibid.*).  Further, that appeal did not reference any log number, much less the log number SVSP 05-00275 (*ibid.*).  A comparison of the dates on plaintiff's submitted copy about Thomas shows that the explanation of dissatisfaction was received by the appeals office for a second level of review on March 18, 2005 (*ibid.*).  Meanwhile, the second level of review response in SVSP 05-00275 about Matheny shows that it was delivered to plaintiff on March 4, 2005 (*id.,* Exh. 26).  Moreover, plaintiff's statement of the problem in SVSP 05-00275 was submitted on January 15, 2005 – prior to the alleged incident against Thomas (Medina Decl., Exh. A).   In light of these irreconcilable dates, it is simply not credible that plaintiff's grievance in SVSP 05-00275 addressed the incidents on January 11, 2005 and January 21, 2005 as plaintiff now insists.

While it is concerning that, in spite of evidence demonstrating otherwise (Opp. to MTD, Exh. 31), defendants declare that plaintiff never submitted an appeal regarding the incident on January 21, 2005 against Thomas, defendants have proven the absence of exhaustion, and plaintiff has not sufficiently shown that any exception to exhaustion applies.  Thus, the federal allegation as to the incident on January 21, 2005 against Thomas is DISMISSED.  The federal allegations as to the incidents on December 13, 2004 and January 11, 2005 against Lopez and Matheny survive defendants' motion to dismiss.

    5.   Claim 13

In Claim 13, plaintiff alleged that on December 29, 2006, and July 31, 2008, defendant Smith retaliated against him (First Amd. Compl. ¶¶ 387-99).  Defendants argue that plaintiff failed to file a grievance regarding the incident on December 29, 2006, but concede that plaintiff exhausted the incident on July 31, 2008 (Reply to MTD at 4).  Plaintiff states that KVSP-08-01788 exhausted both incidents (Opp. to MTD at 32-33).  Defendants respond that the documents in KVSP-08-01788 made no mention of the incident on December 29, 2006 (Reply to MTD at 4).

In KVSP-08-01788 at the director's level of review, plaintiff's appeal was denied (Opp. to MTD, Exh. 27). The decision recognized that plaintiff was complaining about an incident on July 31, 2008, against Smith but did not indicate that plaintiff mentioned any other incident against Smith (*ibid.*). While plaintiff did receive a decision from the director's level of review in KVSP-08-01788, he did not exhaust his administrative remedies regarding a retaliatory action by Smith on December 29, 2006. His appeal at the director's level of review focused only on the events occurring on July 31, 2008 (*ibid.*). Because administrative remedies may not be exhausted where the grievance does not have the same subject and same request for relief, plaintiff did not properly exhaust his administrative appeal regarding the incident on December 29, 2006 in Claim 13. *See, e.g.*, *Morton*, 599 F.3d at 946 (9th Cir. 2010). Thus, the federal allegation as to the 2006 incident is DISMISSED. The federal allegation as to the 2008 incident survives the motion to dismiss.

    6.   Claim 14

In Claim 14, plaintiff alleged that Chambers and Northcutt retaliated against him in a variety of ways in 2007 (First Amd. Compl. ¶¶ 407-24). Defendants argue that although plaintiff filed two appeals against Chambers in 2007, they were screened out, and plaintiff never obtained a decision from the director's level of review.[1]

Plaintiff's allegations of lost, stolen, and destroyed grievances are too vague to effectively rebut defendants' claim that plaintiff has failed to exhaust his administrative remedies (Opp. to MTD at 33-34). Plaintiff has not provided the court with any evidence that suggest his administrative remedies for this claim was obstructed. The allegation that some grievances were lost or destroyed is not sufficient to support the inference that plaintiff's administrative remedies was wrongfully obstructed for all of his claims, particularly when there is ample evidence that many of plaintiff's grievances were recorded and responded to through the director's level of review (Todd Decl., Exh. A). Since April 2007, plaintiff has filed

---

[1] Northcutt's answer to plaintiff's First Amended Complaint is due on May 25, 2011. Thus, he does not join defendants' underlying motions to dismiss.

United States District Court

For the Eastern District of California

United States District Court

For the Eastern District of California

approximately eighty inmate appeals, a number of which he has successfully exhausted (*ibid.*). Plaintiff has also submitted hundreds of pages worth of exhibits to this court, including many copies of inmate appeals and complaints.

Plaintiff has failed to demonstrate that he inquired about the status of the appeals, or attempted to re-file the appeals once he received notice that they were screened out.  Plaintiff has provided no basis to conclude that he made a bona fide effort to obtain review of his grievances, and that such review was "effectively unavailable."  *See Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010).  In the absence of evidence of improper behavior, this court does not credit plaintiff's conclusory allegation that defendants destroyed his inmate appeal regarding this claim.  *Cf. Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment).  Accordingly, the federal allegations raised in Claims 14 are DISMISSED.

7.   Claim 15

In Claim 15, plaintiff alleged that on September 18, 2007, defendants Morales, Sedlezky, Matheny, and Dileo retaliated against him (First Amd. Compl. ¶¶ 430-51). Defendants argue that plaintiff failed to exhaust this claim prior to filing suit.  Plaintiff replies that *Rhodes* supports his position because he exhausted Claim 15 on April 4, 2008, prior to filing his First Amended Complaint on October 13, 2009 (Opp. to MTD at 36).

Defendants distinguish *Rhodes* from plaintiff's case. *See Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010).  In *Rhodes*, the Ninth Circuit held that the PLRA's exhaustion requirement was satisfied with respect to new but related claims asserted in a supplemental pleading that "arose after the initial complaint was filed" if the new claims were exhausted prior to the filing of the supplemental pleading.  *Id.* at 1006-07.  Here, Claim 15 was capable of being exhausted before the initial complaint was filed -- all of the conduct on which plaintiff's Claim 15 is based occurred before that time.  Thus, this case presents a different scenario from that presented in *Rhodes*, where the claims not exhausted at the time of the first complaint were premised entirely on conduct occurring after that complaint's filing.

1    Accordingly, *Rhodes* is distinguishable, and Claim 15 is unexhausted.  The federal

2    allegations raised in Claim 15 are DISMISSED.

3    B.    Motion for Partial Summary Judgment

4    In defendants' motion for partial summary judgment, they argue that Claims 1-6 and 9

5    against Hedgpeth fail to state a claim, and alternatively, that he is entitled to qualified

6    immunity; Claims 10 and 11 are barred by the statute of limitation; plaintiff's state law claims

7    are barred by the California Tort Claims Act; and plaintiff's ADA claims fail to state a claim for

8    damages.

9        1.    Standard of Review

10   Summary judgment is proper where the pleadings, discovery and affidavits show that

11   there is "no genuine issue as to any material fact and [that] the moving party is entitled to

12   judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect

13   the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

14   dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to

15   return a verdict for the nonmoving party.  *See id.*  Once the moving party meets its initial

16   burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or

17   discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ.

18   P. 56(e).  "The non-moving party must do more than show there is some 'metaphysical doubt'

19   as to the material facts at issue." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

20   Corp.*, 475 U.S. 574, 586 (1986)).  "In fact, the non-moving party must come forth with

21   evidence from which a jury could reasonably render a verdict in the non-moving party's favor."

22   *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to

23   judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.  At summary judgment, the

24   judge must view the evidence in the light most favorable to the nonmoving party: if evidence

25   produced by the moving party conflicts with evidence produced by the nonmoving party, the

26   judge must assume the truth of the evidence set forth by the nonmoving party with respect to

27   that fact.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

28

**United States District Court**
For the Eastern District of California

13

**United States District Court**

For the Eastern District of California

2.      Claims 1-6 and 9

In light of the dismissal of Claims 1-6 and 9 for failure to exhaust, it is unnecessary to address this argument.

3.      Claims 10 and 11

In Claim 10, plaintiff alleged that Hass retaliated against him on May 28, 2002.  In Claim 11, plaintiff alleged that McAleavey retaliated against him on April 11, 2003. Defendants argue that because plaintiff's First Amended Complaint was not filed until October 13, 2009, Claims 10 and 11 are barred by the statute of limitation.  Plaintiff opposes defendants' argument, stating that he timely filed lawsuits in state courts regarding those claims (Opp. to MSJ at 12).

Because Section 1983 contains no specific statute of limitation, federal courts apply the forum state's statute of limitations for personal injury actions.  *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).  Effective January 1, 2003, the applicable California statute of limitation for a personal injury claim was two years.  *Id.* (citing Cal. Civ. Proc. Code. § 335.1).  California Civil Procedure Code section 352.1 recognizes imprisonment as a disability that tolls the statute of limitations when a person is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term of less than for life."  *See* Cal. Civ. Proc. Code § 352.1(a).  The disability of imprisonment delays the accrual of the cause of action for a maximum of two years.  *See id.*  In addition, California law provides for equitable tolling of the statute of limitations while exhaustion occurs, regardless of whether or not exhaustion is prerequisite to filing suit.  *Donoghue v. County of Orange*, 84 F.2d 926, 930-31 (9th Cir. 1988). In addition, the Ninth Circuit has specifically held that "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process" required by 42 U.S.C. § 1997e(a).  *Brown*, 422 F.3d at 943.

Regarding Claim 10, plaintiff became aware of the act on May 28, 2002.  Regarding Claim 11, plaintiff became aware of the act on April 23, 2003.  Absent equitable tolling, plaintiff was required to bring his suit within four years of those dates.  Plaintiff alleged that he

14

United States District Court

For the Eastern District of California

1   exhausted Claims 10 and 11 in SVSP 02-02727 (First Amd. Compl. ¶ 329-A; Opp. to MTD at

2   28-29).  SVSP 02-02727 was denied at the director's level of review on April 30, 2003 (Opp. to

3   MTD, Exh. 5).  Thus, plaintiff is entitled to tolling during the time he was exhausting his

4   claims. He should have brought suit by April 30, 2007.

5         Plaintiff alleges that he is entitled to more equitable tolling because he filed suit in 2002

6   in Monterey County superior court regarding Claim 10 but "involuntarily dismissed it without

7   prejudice" on June 15, 2005 (Opp. to MSJ at 12; *id.*, Exh. 9).  Plaintiff argues that he is entitled

8   to more equitable tolling for Claim 11 because he filed suit in 2003 in Monterey County

9   superior court regarding Claim 11, but "involuntarily dismissed it without prejudice" on May 4,

10  2005 (Opp. to MSJ at 12; *id.,* Exh. 10).  Plaintiff states that in 2005, he filed yet another suit in

11  Monterey Count superior court, incorporating both Claims 10 and 11, and "involuntarily

12  dismissed" it on January 12, 2009 (Opp. to MSJ at 12-13).

13        Defendants do not address plaintiff's claim of equitable tolling.  "Under California law,

14  three conditions must be met to toll the statute of limitation: (1) defendant must have had timely

15  notice of the claim; (2) defendant must not be prejudiced by being required to defend the

16  otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good

17  faith."  *Bacon v. City of Los Angeles*, 843 F.2d 372, 374 (9th Cir. 1988) (internal citations

18  omitted); *cf. Addison v. State of California*, 21 Cal.3d 313, 317 (1978) (holding plaintiff is not

19  barred by statute of limitation "when, possessing several legal remedies he, reasonably and in

20  good faith, pursues one designed to lessen the extent of his injuries or damage").

21        It appears that Claims 10 and 11 sufficiently satisfy the three-pronged test so that

22  plaintiff may receive equitable tolling.  *Cf. Lucchesi v. Baro-O Boys Ranch*, 353 F.3d 691, 694-

23  96 (9th Cir. 2003) (discussing equitable tolling in Section 1983 case).  Thus, defendants'

24  motion for summary judgment on Claims 10 and 11 are DENIED without prejudice to renewal,

25  if defendants can make the proper evidentiary showing that plaintiff's asserted state filings did

26  not satisfy the three-pronged test.

27        4.      <u>California Tort Claims Act</u>

28

15

1    Defendants argue that plaintiff's state law claims in Claims 1-9, 15 and 16 should be

2    dismissed because he failed to file suit with six months after the denial of his tort claim,

3    pursuant to California Code of Civil Procedure Section 945.6(a)(1).  Plaintiff opposes the

4    argument, alleging that he is entitled to both equitable tolling and equitable estoppel.

5    Before a state law claim can be brought, whether in state or federal court, the California

6    Tort Claims Act requires that a claim against a public entity or its employees be presented to the

7    California Victim Compensation and Government Claims Board, formerly known as the State

8    Board of Control, no more than six months after the cause of action accrues.  Cal. Govt. Code

9    §§ 905, 911.2, 945.4, 950.2; *Hernandez v. McClanahan*, 996 F. Supp. 975, 977 (N.D. Cal.

10   1998) (failure to present timely California tort claims bars plaintiff from bringing them in

11   federal suit).  If the claim is rejected, the claimant thereafter has six months to file a lawsuit.

12   Cal. Govt. Code § 945.6.

13   Regarding the state law claims in Claims 1-6 and 9, plaintiff argues that he is entitled to

14   equitable tolling.  He states that he did not file a lawsuit within six months of his tort claim

15   being rejected because he was exhausting his administrative remedies for those claims in

16   KSVP-06-02502 (Opp. to MSJ at 14).  However, as discussed above, and as pointed out by

17   defendants, KSVP-06-2502 did not have the same subject and same request for relief, and

18   therefore, did not exhaust Claims 1-6 or 9.  *See, e.g.*, *Morton*, 599 F.3d at 946.  Accordingly,

19   plaintiff has not shown that defendants had timely notice of the state law claims in Claims 1-6

20   or 9, and he is not entitled to equitable tolling for those claims.  Thus, the state law claims in

21   Claim 1-6 and 9 are barred.

22   Regarding Claims 7, 8, and 16, defendants claim that plaintiff never filed a tort claim

23   regarding those incidents (MSJ at 8).  Plaintiff asserts that he gave his tort claim to prison

24   officials for mailing on April 17, 2009 (Plaintiff Decl. Opp. MSJ ¶ 9).  However, insists

25   plaintiff, his copy of the mailed claim, along with follow-up letters and attachments were

26   confiscated on August 14, 2009 by Sergeant Hightower (*ibid.*).  The Board of Control sends all

27   tort claims filed by a state prisoner to the Tort Claims Coordinator at the Office of the Attorney

28

United States District Court

For the Eastern District of California

General, who then keeps a record of all tort claims documents (Ott Decl. ¶ 1).  Both Ott and the Board of Control agreed that plaintiff had not filed any tort claim regarding the incidents in Claims 7, 8 or 16 (*id.* ¶¶ 2, 4, 5).  In addition, plaintiff's administrative appeal regarding the alleged confiscation of property by Hightower on August 14, 2009 only complained that Hightower removed his loaned typewriter and typing supplies -- not that Hightower confiscated any paperwork or legal documents (Opp. to MSJ, Exh. 14).  Moreover, plaintiff does not provide evidence that his claim was ever actually filed or mailed to the Board of Control.  In the absence of evidence of improper behavior, we do not credit plaintiff's unsupported and conclusory statement that he filed a tort claim for Claims 7, 8, and 16.  *Cf. Taylor*, 880 F.2d at 1045.  Thus, the state law claims in Claims 7, 8, and 16 are barred.

Regarding Claim 15, defendants point out that the Board of Control rejected plaintiff's tort claim on May 15, 2008 (MSJ at 8).  Plaintiff did not file suit pleading Claim 15 until October 13, 2009.  However, plaintiff claims that he is entitled to equitable estoppel because defendants prevented him from filing on time (Opp. to MSJ at 16).

In the Ninth Circuit, the general elements of estoppel are: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.  *Watkins v. U.S. Army*, 875 F.2d 699, 709 (9th Cir. 1989) (en banc); *see also Morgan v. Gonzales*, 495 F.3d 1084, 1092 (9th Cir. 2007).  To successfully assert an equitable estoppel defense in this case, plaintiff would have to allege "some active conduct by the defendant *above and beyond* the wrongdoing upon which the plaintiff's claim is filed" that then "prevent[ed] the plaintiff from suing in time."  *Lukovsky v. City & County of S.F.*, 535 F.3d 1044, 1051-52 (9th Cir. 2008) (emphasis in original) (internal quotation marks omitted).  Plaintiff argues that defendants prevented him from accessing his documents and threatened harm if he continued to prosecute the underlying suit.  His claims in support of estoppel are the very bases of his claims in this action, and thus are not sufficient to satisfy estoppel.  *See ibid.*  Moreover, that plaintiff

1   continued to exhaust Claim 15 in his administrative appeal, and filed six court filings in this

2   underlying suit within the six months in which he had to file his Claim 15, severely undercuts

3   his alleged impediments to filing a timely suit.  Petitioner is not entitled to equitable estoppel

4   for the untimely state claims in Claim 15.

5          Accordingly, plaintiff state law claims are DISMISSED.

6          5.        ADA claims

7          Defendants argue that plaintiff's claims under the ADA fail because it does not permit a

8   plaintiff to seek damages from individuals (MSJ at 9).  Plaintiff insists that he "has not brought

9   suit based on a violation of the [ADA]" (Opp. to MSJ at 19).  However, argues plaintiff, he is

10  entitled to file a money damages suit against both KVSP – who was previously dismissed – and

11  other individuals, based on a violation of the ADA, through the Civil Rights Act (*ibid.*).

12         Title II of the ADA, 42 U.S.C.§ 12101 et seq., provides that "no qualified individual

13  with a disability shall, by reason of such disability, be excluded from participation in or be

14  denied the benefits of the services, programs, or activities of a public entity, or be subjected to

15  discrimination by any such entity."  42 U.S.C. § 12132.  The Ninth Circuit has held that states

16  are not entitled to Eleventh Amendment immunity under Title II of ADA.  *Phiffer v. Columbia*

17  *River Correctional Institute*, 384 F.3d 791, 792 (9th Cir. 2004) (per curiam).  The Supreme

18  Court has also held that "insofar as Title II creates a private cause of action for damages against

19  the States for conduct that actually violates the Fourteenth Amendment, Title II validly

20  abrogates state sovereign immunity."  *United States v. Georgia*, 546 U.S. 151, 159 (2006)

21  (court erred in dismissing a paraplegic prisoner's Title II claims that were based on

22  unconstitutional conduct) (emphasis in original).

23         Plaintiff misreads *Georgia*, and insists that *Georgia* gives him the right to file a civil

24  rights suit alleging a violation of the ADA against both individuals and the state prison (Opp. to

25  MSJ at 19).  Plaintiff is mistaken.  *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002)

26  ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her

27  individual capacity to vindicate rights created by Title II of the ADA or section 504 of the

28

United States District Court
For the Eastern District of California

18

United States District Court

For the Eastern District of California

Rehabilitation Act."). Accordingly, his Section 1983 claims that defendants violated the ADA are DISMISSED. *Cf. O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007) (advising that if a plaintiff clearly labels his complaint as one under the ADA or Rehabilitation Act, the court should not construe it to be a Section 1983 complaint; the court should respect the plaintiff's choice of legal theory).

Alternatively, even if plaintiff wished to allege a violation of the ADA, his claim would be untenable. The elements of a cause of action under Title II are that: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *cf. Olmstead v. Zimring*, 527 U.S. 581, 589-91 (1999) (essentially same showing required to state cause of action under Section 504 of the Rehabilitation Act). Here, plaintiff has not alleged that he was otherwise qualified to participate or receive the benefit of the prison's services or programs, nor that he was excluded from participation in, or denied the benefit of those services or programs because of his disability.

C.      Motion to declare plaintiff a vexatious litigant

Defendants move to have plaintiff declared a vexatious litigant based on his repeated filings in this and in other federal and state civil cases in which plaintiff is a party, either as a plaintiff or defendant. In particular, defendants seek an order declaring plaintiff a vexatious litigant, requiring him to post security prior to proceeding in this suit or face dismissal, and prohibiting him from filing any new lawsuit without first receiving permission from the presiding judge.

The Ninth Circuit recognizes "the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under appropriate

19

United States District Court

For the Eastern District of California

circumstances." *De Long v. Hennessey*, 912 F.2d 1144, 1146 (9th Cir. 1990). A request to declare a party a vexatious litigant entails consideration of four factors: (1) the party must have had adequate notice and an opportunity to oppose the order; (2) there must be an adequate record for review, including a list of all cases and motions that led the court to conclude that a vexatious litigant order was necessary; (3) the court must make a substantive finding as to the frivolous or harassing nature of the litigant's actions; and (4) the order must be narrowly tailored to fit the particular problem involved. *Id.* at 1147-48. "[P]re-filing orders are an extreme remedy that should rarely be used . . . because such sanctions can tread on a litigant's due process right of access to the courts." *Id.* "Nevertheless, '[f]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants.'" *Moski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007) (quoting *DeLong*, 912 F.3d at 1148).

There can be no legitimate dispute that plaintiff is an abusive litigant. The record in the various federal and state civil actions involving plaintiff is littered with his repeated and prolific motions and other requests in which he accuses a variety of defendants of committing wrongs against him, and conspiring to do so. Nonetheless, it appears that out of the eleven cases cited by defendants in support of their motion, defendants were not parties to at least seven of the actions in which plaintiff submitted the offending filings. Defendants have cited no legal authority to support the conclusion that the court may, or that it is appropriate to, impose a pre-filing order preventing plaintiff from submitting further filings against them, based on complaints and filings in other actions in which these defendants were not parties. *C.f. Stone v. Maricopa County*, 2008 WL 4446697, *7 (D. Ariz. Sept.8, 2008) (imposing vexatious litigant ordered based on plaintiff's "history of filing and re-filing the same claims against the same defendants involving the same two fact patterns"). In addition, defendants' request that the vexatious litigant order apply to "any" new litigation is not narrowly-tailored to prevent his abusive behavior. *See De Long*, 912 F.2d at 1147. In light of the concerns expressed above,

defendants' motion for an order declaring plaintiff a vexatious litigant is DENIED.  Plaintiff is warned, however, that he has no right to file frivolous and harassing lawsuits or motions, and that doing so violates Rule 11 of the Federal Rule of Civil Procedure.  Rule 11 applies equally to attorneys and pro se litigants alike.  *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994).

D.    Motion to reconsider

Plaintiff moves the court to reconsider its dismissal of his RICO claim and defendants Kern Valley State Prison, Deputy Attorney General Scott Feudale, and D. Tarnoff.  The court is persuaded that the RICO claim should survive, and grants plaintiff's motion to reconsider the dismissal of that claim.

1.    RICO

There is a private right of action for violation of RICO.  *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008).  Plaintiff alleges a violation of Section 1962(c), which "prohibits a person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct of the enterprise through a pattern of racketeering activity," *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1147 (9th Cir. 2008), and Section 1962(d), which prohibits the conspiracy to do so, *Canyon County*, 519 F.3d at 972.  The elements of a substantive RICO claim are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to business or property, with the conspiracy claim being necessarily dependent upon the existence of the substantive RICO violation.  *Sanford v. Memberworks, Inc.*, 625 F.3d 550, 557, 559 (9th Cir. 2010).

Here, plaintiff alleged predicate acts of tampering, retaliation, and mail fraud.  Plaintiff's claims of tampering and retaliation sufficiently allege predicate acts.  However, mail fraud "consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails, or causing such a use, in furtherance of a scheme; and (3) specific intent to deceive or defraud," *Sanford*, 625 F.3d at 557 (citing *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986)).  Plaintiff makes no allegation that Haas "used" the U.S. Mails -- merely that Haas confiscated plaintiff's incoming mail and

United States District Court
For the Eastern District of California

21

destroyed it.  (First Amd. Compl. ¶¶ 315-25).  Plaintiff's claim does not sufficiently support a predicate act for mail fraud.

In addition, "to recover under RICO, the individual 'must show proof of concrete financial loss' and must demonstrate that the racketeering activity proximately caused the loss." *Guerrero v. Gates*, 442 F.3d 697, 707 (9th Cir. 2006) (quoting *Chaset v. Fleer/Skybox Int'l* 300 F.3d 1083, 1087 (9th Cir. 2002)).  "Without a harm to a specific business or property interest -- a categorical inquiry typically determined by reference to state law -- there is no injury to business or property within the meaning of RICO."  *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005).  A plaintiff also must satisfy the RICO causation element by demonstrating that the defendants' conduct directly and proximately caused the alleged injury.  *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001).

Here, plaintiff alleges several injuries to his business or property.  First, plaintiff claims that he has lost property because defendants have hindered his ability to enforce and collect judgment debts owed to him in at least four superior court cases (Mtn. Recon. at 14-15; First Amd. Compl. ¶ 619-20).  However, there is no suggestion that plaintiff has "lost" his interest or was otherwise harmed.  If plaintiff was awarded judgments in these matters, there is no indication that defendants' actions or inactions have harmed his property interest in collecting those judgments.  Second, plaintiff claims that he suffered a financial loss when he involuntarily dismissed several superior court cases due to defendants' actions (Mtn. Recon. at 15; First Amd. Compl. ¶ 619-20).  However, plaintiff has no property interest in any financial judgment that was not yet awarded to him.   Third, plaintiff claims that he has lost: the gross market value and income from his business, Venice Oakwood Crises Center and News publications; ownership and partnership in CFF Properties and CFF plaza, as well as income earnings and the fair market value of real estate properties;  (*ibid.*).  However, these allegations of loss are too vague to draw any inference as to how defendants' conduct directly caused these injuries. *Cf. Ove*, 264 F.3d at 825.  Plaintiff alleges that defendants destroyed records and documents, and threatened physical harm to plaintiff, but he fails to provide any link between how those actions

directly and proximately caused injury to his business or property. Fourth, plaintiff claims that he lost the expected earnings and fair market value of his patent pending inventions and copyright pending unpublished book manuscripts (*ibid.*). However, these losses do not satisfy proof of a "concrete financial loss." *See Steele v. Hospital Corp. of America*, 36 F.3d 69, 71 (9th Cir. 1994) ("We have held that speculative injuries do not serve to confer standing under RICO, unless they become concrete and actual."). Finally, plaintiff claims that defendants' conduct destroyed his word processors, 32 typing cartridges, 8 eraser ribbons, a multitude of law books, and $277 worth of store goods (Mtn. Recon. at 15; First Amd. Compl. ¶ 619-20). These losses are sufficient to satisfy the element of an injury to business or property. Liberally construed, plaintiff has stated a cognizable RICO claim.

2.     <u>Kern Valley State Prison</u>

Plaintiff asserts that KVSP waived its Eleventh Amendment immunity (Mtn. Recon. at 17-19). Although a state's removal of a lawsuit from state court to federal court waives its Eleventh Amendment immunity as to the entire case, including both state and federal law claims against it, *Embury v. King*, 361 F.3d 562, 565-66 (9th Cir. 2004), that is not the situation here. Here, KVSP was named as a defendant after this action had already been removed to federal court. KVSP has not "engaged in any conduct that could be deemed incompatible with an intent to preserve its Eleventh Amendment immunity." *Hill v. Blind Indus. & Services*, 179 F.3d 754, 758 (9th Cir. 1999); *see Herbert v. City and County of San Francisco*, No. 08-5748 CW, 2009 WL 691067. *2-3 (N.D. Cal. March 10, 2009). Thus, plaintiff's motion to reconsider the dismissal of KVSP is DENIED.

3.     <u>Deputy Attorney General Scott Feudale</u>

Plaintiff asserts that the court should not have dismissed Feudale because he is not entitled to absolute immunity based on the allegations against him in Claim 15. In light of the court's dismissal of Claim 15 for failure to exhaust, plaintiff's motion to reconsider the dismissal of Feudale is DENIED as moot.

4.     <u>D. Tarnoff</u>

Plaintiff claims that the court should not have dismissed Tarnoff for failing to state a claim against him because he is liable as a participant in the RICO scheme as alleged in the First Amended Complaint (Mtn. Recon. at 21). The court initially dismissed Tarnoff because there is no constitutional right to a prison administrative appeal or grievance system. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Despite plaintiff's request for reconsideration, plaintiff fails to state a cognizable RICO claim against Tarnoff because the accusations that Tarnoff was engaged in racketeering activity and conspired with defendants are conclusory and otherwise factually unsupported. Thus, the motion to reconsider the dismissal of Tarnoff is DENIED.

## CONCLUSION

1. Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's federal allegations in Claims 1-6, 9, 15, and a portion of 12, 13, 14 are **DISMISSED** without prejudice. Adams' motion to dismiss is **DENIED**. Lopez' motion to dismiss is **DENIED**.

2. Defendants' motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's state law claims are **DISMISSED**. Plaintiff's ADA claims are **DISMISSED**.

3. Defendants' motion to declare plaintiff as a vexatious litigant is **DENIED**.

4. Plaintiff's motion for reconsideration is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's RICO claim is hereby reinstated.

5. The court orders as follows:

   a. No later than sixty days from the filing date of this order, defendants shall file a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the court prior to the date their summary judgment motion is due. All papers filed with the court shall be promptly served on the plaintiff.

   b. Plaintiff's opposition to the dispositive motion, if any, shall be filed with the court and served upon defendants no later than thirty days from the date of service of the motion. Plaintiff must read the attached page headed "NOTICE -- WARNING," which is

**United States District Court**

For the Eastern District of California

1   provided to him pursuant to *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc),

2   and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

3        If defendants file an unenumerated motion to dismiss claiming that plaintiff failed to

4   exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), plaintiff

5   should take note of the attached page headed "NOTICE -- WARNING (EXHAUSTION),"

6   which is provided to him as required by *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.4 (9th Cir.

7   2003).

8        c.  If defendants wish to file a reply brief, they shall do so no later than fifteen

9   days after the date of service of the opposition.

10        d.  The motion shall be deemed submitted as of the date the reply brief is due.

11   No hearing will be held on the motion unless the court so orders at a later date.

12        6.  All communications by the plaintiff with the court must be served on defendants, or

13   defendants' counsel once counsel has been designated, by mailing a true copy of the document

14   to defendants or defendants' counsel.

15        7.  It is the plaintiff's responsibility to prosecute this case.  Plaintiff must keep the court

16   informed of any change of address and must comply with the court's orders in a timely fashion.

17   Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to

18   Federal Rule of Civil Procedure 41(b).

19        **IT IS SO ORDERED.**

20   Dated: May __18___, 2011.

21   WILLIAM ALSUP
     UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

**United States District Court**
For the Eastern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE -- WARNING (SUMMARY JUDGMENT)**

If defendants move for summary judgment, they are seeking to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.

**NOTICE -- WARNING (EXHAUSTION)**

If defendants file an unenumerated motion to dismiss for failure to exhaust, they are seeking to have your case dismissed. If the motion is granted it will end your case.

You have the right to present any evidence you may have which tends to show that you did exhaust your administrative remedies. Such evidence may be in the form of declarations (statements signed under penalty of perjury) or authenticated documents, that is, documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers, such as answers to interrogatories or depositions.

If defendants file a motion to dismiss and it is granted, your case will be dismissed and

1    there will be no trial.

2
G:\PRO-SE\WHA\E.D. CAL\CRAYTON621\CRAYTON621mtdmisc.wpd
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Eastern District of California