IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY CRAYTON,<br><br>    Plaintiff,<br><br>  v.<br><br>A. HEDGPETH, K. HARRINGTON,<br>and L. WOOD,<br><br>    Defendants.<br>_____/ | No. C 08-00621 WHA (PR)<br><br>**ORDER DENYING MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT; DENYING DEFENDANTS' MOTION TO STRIKE AS MOOT; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Plaintiff filed this pro se civil rights action in state court. Because the complaint contained federal claims under 42 U.S.C. 1983, defendants timely removed the case to federal court. *See* 28 U.S.C. 1441, 1367. Plaintiff then filed an amended complaint in which he alleged, *inter alia*, that defendants Hedgpeth, Harrington, and Wood violated his Eighth Amendment right to be free from cruel and unusual punishment by being deliberately indifferent to his safety needs. Specifically, plaintiff claimed that defendants knew he needed a "grab bar" above his bed due to his impaired mobility, yet failed to ensure that plaintiff received such safety measures. Plaintiff has filed a motion for leave to file a supplemental complaint, defendants have filed a motion to strike plaintiff's supplemental complaint, plaintiff has filed an opposition to defendants' motion to strike, and defendants have filed a reply. Defendants have also filed a motion for summary judgment and served plaintiff with the warning about summary judgment motions required by *Rand v. Rowland*, 154 F.3d 952, 953–954 (9th Cir. 1998) (en

banc). Plaintiff has filed an opposition, and defendants have filed a reply. For the reasons discussed below, plaintiff's motion for leave to file a supplemental complaint is **DENIED**, defendants' motion to strike is **DENIED** as moot, and defendants' motion for summary judgment is **DENIED**.

**STATEMENT**

The following facts are not in dispute, unless otherwise noted.

At the time of the events giving rise to this lawsuit, plaintiff was an inmate incarcerated at Kern Valley State Prison ("KVSP") (Statement of Undisputed Facts ¶ 2). Plaintiff is a paralytic inmate with brain damage, and uses a wheelchair due to his mobility impairments and medical disabilities (Amd. Compl. ¶ 16). Specifically, plaintiff has permanent dysfunctional paralysis on his right side as a result of gunshot wounds, two strokes, and brain damage (*id.* ¶ 188). Defendant Hedgpeth was employed as the Warden of KVSP between 2007 and November 30, 2008 (Hedgpeth Decl. ¶ 1). Defendant Harrington was employed at Wasco State Prison from 2003 through November 30, 2008 (Harrington Decl. ¶ 1). On December 1, 2008, Harrington began working as the Warden of KVSP (*ibid.*). Defendant Wood began working at KVSP on November 10, 2008 (Wood Decl. ¶ 2). He was the Captain for Facility D at KVSP from November 10, 2008 through December 11, 2008 (*ibid.*).

Plaintiff claims that he met with Hedgpeth in 2005 or 2006, and they discussed plaintiff's disabilities and need for accommodations while they both were at Salinas Valley State Prison (Opp. 12). Plaintiff alleges that Hedgpeth told him that they would both be transferring to KVSP (*ibid.*). In the latter half of 2006, plaintiff claims that he again encountered Hedgpeth, and informed Hedgpeth that plaintiff had suffered a fall when he was in cell number D4-120 in February 2006 (*ibid.*). At that time, plaintiff requested that Hedgpeth place him in a cell with safety grab bar accommodations (*ibid.*). Hedgpeth does not dispute this.

On July 2, 2008, plaintiff was transferred to administrative segregation, unit number 2, cell number 149 (Amd. Compl. ¶ 184). Plaintiff alleges that Wood assigned plaintiff to that cell which was not fit to accommodate the housing needs of a wheelchair paralytic such as plaintiff

2

(*ibid.*). Specifically, prison cell number 149 was not equipped with the mandatory Americans with Disabilities Act ("ADA") accommodation grab bar which is required to be mounted underneath top bunks to allow paralytic inmates to grab, hold onto, and transfer themselves from the bottom bunk to a wheelchair (*id.* ¶ 185). Plaintiff claims that he complained to Wood about the fact that cell number 149 was not compliant to serve the needs of a wheelchair paralytic, but Wood denied plaintiff's requests (*id.* ¶ 184). Wood declares, however, that he was not working at KVSP in July 2008, and in fact, did not begin working at KVSP until November 10, 2008 (Wood Decl. ¶ 1).

The following day, on July 3, 2008, plaintiff was attempting to transfer himself from the bunk to his wheelchair, reached for the non-existent grab bar, and fell (Amd. Compl. ¶ 188). Plaintiff suffered from dizziness, blurred vision, headaches, neck and spinal pains, bruises, and acute loss of feeling and function in his left side (*ibid.*). After plaintiff was treated for his injuries, plaintiff returned to general population housing, prison cell D7-122, where he still felt pain for weeks after the incident (*id.* ¶ 189).

On December 5, 2008, plaintiff was transferred to administrative segregation lockup unit number 1, prison cell number 148 (*id.* ¶ 227). That cell was not equipped with the mandatory grab bar (*id.* ¶ 228). Indeed, plaintiff claims that he told Harrington about his need for grab bar in December 2008 prior to plaintiff's injury (Opp. 16–17). On December 9, 2008, plaintiff attempted to move himself from his wheelchair to the bunk bed but lost his balance and had no grab bar to prevent his fall (Amd. Compl. ¶¶ 232–33). Plaintiff suffered from bruises, body and joint pain, and head trauma (*id.* ¶ 233). Harrington disputes that plaintiff ever spoke with him regarding the need for a grab bar in either ASU cell number 148 or 149 (Harrington Decl. ¶ 7). Although Wood was not assigned to Facility B, where ASU cell number 148 was located (Wood Decl. ¶ 3), in December 2008, Wood was the senior officer reviewing plaintiff's serious rule violation report and lock-up order (Opp. 18–19). At some point prior to plaintiff's injury on December 9, 2008, plaintiff pointed out to Wood that cell number 148 was defective and unfit for plaintiff because it did not have the grab bar underneath the top bunk (*id.* at 19).

3

Wood did not fix the problem (*ibid.*). Wood disputes that he had such conversations with plaintiff (Wood Decl. ¶ 6).

On December 11, 2008, plaintiff was temporarily removed from prison cell number 148, and upon his return, the cell floor was covered in water from earlier repairs (Amd. Compl. ¶ 236). Plaintiff requested assistance to be transferred to the bunk, but was ignored (*ibid.*). After several hours with no assistance, plaintiff attempted to move to the bunk on his own and fell (*id.* ¶ 237). Plaintiff temporarily lost his vision, began to vomit, and suffered excruciating pain (*ibid.*).

Plaintiff claims that he previously injured himself in February 2006 because his cell at that time, number D4-120, did not have a grab bar (*id.* ¶ 69). Because of that injury and similar injuries in 2008, alleges plaintiff, defendants should have known that the failure to place plaintiff in a wheelchair accessible cell without a grab bar would cause him harm (*id.* ¶¶ 193–94.) Plaintiff also asserts that Hedgpeth and Harrington are liable as supervisors for failing to have grab bars installed in all wheelchair accessible cells.

## ANALYSIS

A.   <u>MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT</u>

After the court's May 20, 2011 order granting in part defendants' motion to dismiss, defendants filed a motion to dismiss for misjoinder (dkt. no. 184). On August 7, 2012, the court granted defendants' motion to dismiss misjoined defendants and claims, and directed plaintiff to file a second amended complaint, or the court would proceed with only plaintiff's deliberate indifference claims against defendants Hedgpeth, Harrington, and Wood (dkt. no. 221). After granting two extensions of time and allowing plaintiff approximately three months to file a second amended complaint if he wished to proceed on claims other than the deliberate indifference claim, and receiving no second amended complaint from plaintiff, on December 14, 2012, the court set a briefing schedule (dkt. no. 232). Defendants filed their motion for summary judgment on January 18, 2013 (dkt. no. 234). On February 13, 2013, plaintiff requested a "stay" of proceedings, stating that he was awaiting transfer to another institution.

4

On March 8, 2013, the court stayed the proceedings until June 12, 2013 to give plaintiff additional time in which to file an opposition to defendants' motion for summary judgment (dkt no. 240). On March 29, 2013, plaintiff filed a motion for leave to file a supplemental complaint.

Plaintiff claims that the supplemental complaint is "in compliance with the August 7, 2012 order" and the "September 20, 2012 amended order that instructed the plaintiff to file an amended complaint in this case." Plaintiff further asserts that the supplemental complaint includes civil rights violations that have been committed by the defendants which are similar to those offenses alleged in the original complaint, and involve subsequent acts occurring after the filing of plaintiff's amended complaint. Defendants move to strike plaintiff's supplemental complaint, and urge the court to dismiss this entire action because the supplemental complaint violates the rule against misjoinder, and does not comply with the court's orders.

Federal Rule of Civil Procedure 15(d) permits "supplemental pleadings setting forth transactions or occurrences or events that have happened since the date of the pleading sought to be supplemented." The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as is possible. *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir.1986). "Rule 15(d) is intended to give district courts broad discretion in allowing supplemental pleadings. The rule is a tool of judicial economy and convenience." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). "[A] supplemental complaint should have some relation to the claim set forth in the original pleading," and a court may deny leave to supplement a complaint on grounds of undue delay, prejudice to the opposing party, or futility. *Id.* at 474. A claim is futile if no set of facts could be proved which would support it, or if the claim would be subject to dismissal. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

Here, plaintiff attempts to supplement his complaint by adding new allegations against sixteen newly named defendants plus twenty John Doe defendants. Indeed, the court previously dismissed most of these new defendants. Moreover, some of the new events described by

plaintiff in his motion to supplement are unrelated to the underlying claims, and did not occur subsequently to the filing of plaintiff's amended complaint. *See* FED. R. CIV. P. 15(d). For example, in his proposed supplemental complaint, plaintiff alleges that, from February 24, 2006 through February 28, 2006, Officer Corrales and Officer Matheny forced plaintiff to stay in a cell without a mattress, bedding, or clothing and intimated that they were doing so in retaliation for plaintiff's filing a lawsuit (dkt. no. 241 ¶¶ 28–47). Plaintiff alleged these same facts in his amended complaint (dkt. no. 12 at 14–28). In the court's May 20, 2011 order, the court dismissed plaintiff's claims against Officer Corrales and Officer Matheny for failure to exhaust. In addition, in the proposed supplemental complaint, plaintiff raises a new retaliation claim against Lieutenant M. Stewart, Sergeant Epperson, and Sergeant Crother, and states that in July 2011, they insisted on housing plaintiff in an "unfit cell" in retaliation for plaintiff's lawsuits. The court has already advised plaintiff that it would not accept further misjoined claims and defendants, and has previously given plaintiff ample opportunities to amend or change his underlying claims.

   This action has been pending since May 2008, and if new defendants and claims are added at this stage of the proceedings, screening the complaint and serving process may take longer. Plaintiff was already given approximately three months to submit a second amended complaint on or before December 2012, but failed to do so until March 29, 2013. In addition, the court has reviewed the proposed supplemental complaint and finds that it improperly includes new and distinct causes of action – some of which have previously been dismissed by this court. *See Planned Parenthood of So. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997). At this late date, the court finds that the supplemental complaint is unduly delayed. Thus, plaintiff's motion for leave to file a supplemental complaint is **DENIED**, and defendants' motion to strike is **DENIED** as moot.

B.  MOTION FOR SUMMARY JUDGMENT

  1.  STANDARD OF REVIEW

   Summary judgment is proper where the pleadings, discovery and affidavits show that

6

there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Ibid*.

2. ANALYSIS

Plaintiff claims that defendants were deliberately indifferent to his safety, in violation of the Eighth Amendment, by placing plaintiff in wheelchair accessible cells that were not fitted with mandatory grab bars, and defendants Hedgpeth and Harrington were deliberately indifferent to his safety by implementing and directing a policy of failing to ensure that wheelchair-bound inmates be placed in ADA-compliant cells with grab bars.

A prisoner may state a § 1983 claim under the Eighth Amendment against prison officials only where the officials acted with "deliberate indifference" to the threat of serious harm or injury by physical conditions at the prison. *Frost v. Agnos*, 152 F.3d 1124, 1128–29 (9th Cir. 1998). But neither negligence nor gross negligence will constitute deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 835–36 & n.4 (1994). A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837. The official must both be aware of facts from which the inference could be

1  drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Ibid.*

2  The parties do not dispute that plaintiff fell and injured himself after attempting to
3  transfer himself to and from his wheelchair to a lower bunk in February 2006 in cell number
4  D4-120; in cell number ASU 149 on July 3, 2008; and in cell number ASU 148 on December 6,
5  2011 and December 11, 2011.  The parties also do not dispute that there was no grab bar
6  installed underneath the top bunks on those dates and in those particular cells.  The evidence
7  submitted, however, shows that the parties have a genuine dispute regarding whether defendants
8  had knowledge that ASU cell numbers 148 and 149 did not have grab bars, and knew that the
9  lack of grab bars posed an excessive risk to plaintiff's safety and ignored it.

10  Plaintiff asserts that Hedgpeth and Harrington were aware of the need to maintain safe
11  housing for mobility impaired inmates, including that wheelchair accessible cells be equipped
12  with mandatory grab bars, pursuant to the *Armstrong* remedial plan.  *See Armstrong v. Brown*,
13  No. C 94-2307 CW (N.D. Cal. filed June 29, 1994).  Specifically, plaintiff submits a
14  compliance memorandum, dated May 5, 2008, which set forth a plan to bring state prisons in
15  compliance with the *Armstrong* decree and the ADA (Opp. Exh 1).  Plaintiff asserts that
16  evidence of this memorandum demonstrates that defendants were put on notice that they were
17  to maintain safe housing – including the installation or repair of grab bars – for mobility
18  impaired inmates (Opp. 9).  Plaintiff further claims that he personally spoke with each
19  defendant prior to his injuries and informed them of his need to be housed in a wheelchair
20  accessible cell which had grab bars installed underneath the top bunks.

21  On the other hand, defendants flatly deny that, between July 2008 and December 12,
22  2008, they were responsible for inspecting any cells for ADA compliance, that they knew ASU
23  cell numbers 148 and 149 needed a grab bar or was otherwise unsafe to house plaintiff, or that
24  they personally assigned plaintiff to ASU cell number 148 or 149.

25  The evidence shows that there are genuine issues of material fact regarding whether
26  defendants knew of an excessive risk to plaintiff and ignored it.

27  Defendants also argue that they are entitled to qualified immunity.  The defense of
28

8

qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

The qualified immunity inquiry is separate from the constitutional inquiry for a claim of deliberate indifference under the Eighth Amendment. *Estate of Ford v. Caden*, 301 F.3d 1043, 1053 (9th Cir. 2002). For a qualified immunity analysis, the Court need not determine whether the facts alleged show that Defendants acted with deliberate indifference. *See Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). Rather, the focus of review is the objective requirement. *Id.* at 937. The Court need only review the relevant law to determine whether, in light of clearly established principles at the time of the incident, the officials could have reasonably believed their conduct was lawful. *See ibid.*

Persons involuntarily confined by the state have a constitutional right to safe conditions of confinement. *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985). Nonetheless, "[n]ot every deviation from ideally safe conditions amounts to a constitutional violation." *Id.* For example, a prisoner's bare complaint about a slippery floor, without more, does not state an arguable claim for cruel and unusual punishment. *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989). Notably, in *Frost v. Agnos*, 152 F.3d 1124, 1128–29 (9th Cir. 1998), the Ninth Circuit found as a matter of first impression that there was a triable issue of fact regarding whether prison officials must provide handicapped-accessible shower facilities to a disabled detainee, despite their knowledge that the inmate's use of crutches had already caused him to fall and injure himself on several occasions on the slippery bathroom floor. *See id.* at 1129–30; *see also LaFaut v. Smith*, 834 F.2d 389, 392–394 (4th Cir. 1987) (finding that the failure of prison officials to ensure that mobility-impaired inmates had accessible toilet facilities resulted

1  in the violation of a prisoner's constitutional rights). This law was clearly established by 1998.

2  Here, plaintiff, a wheelchair bound paralytic, alleges that defendants failed to ensure that he was housed in a wheelchair accessible cell with a grab bar accommodation, even after plaintiff had complained to defendants, and defendants knew that plaintiff had been injured from the lack of a grab bar. Viewing the facts in the light most favorable to plaintiff, and in light of *Frost*, reasonable prison officials could not have believed that their conduct was lawful.

Accordingly, defendants' motion for summary judgment is **DENIED**.

C.  REFERRAL TO PRO SE PRISONER SETTLEMENT PROGRAM

Prior to setting this matter for trial, the court finds good cause to refer this matter to Magistrate Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claim set forth above. The proceedings will consist of one or more conferences as determined by Judge Vadas. The conferences shall be conducted with defendants, or their representative, attending by videoconferencing if they so choose. If these settlement proceedings do not resolve this matter, the court will then set this matter for trial and consider a motion from plaintiff for appointment of counsel.

**CONCLUSION**

Plaintiff's motion to for leave to file a supplemental complaint is **DENIED**. Defendants' motion to strike plaintiff's supplemental complaint is **DENIED**. Defendants' motion for summary judgment is **DENIED**.

This case is **REFERRED** to Magistrate Judge Vadas pursuant to the Pro Se Prisoner Mediation Program. The proceedings shall take place within **one-hundred twenty (120) days** of the filing date of this order or is as soon is practicable. Judge Vadas shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within **ten (10) days** after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.

The clerk of the court shall mail a copy of the court file, including this order, to Judge Vadas in Eureka, California.

The instant case is STAYED pending the settlement conference proceedings.

**IT IS SO ORDERED.**

Dated: August __21__, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\E.D. CAL\CRAYTON621\CRAYTON621final.wpd